# In the United States Court of Federal Claims

No. 11-257 C
(Filed: December 29, 2011)

```
*************************************
CITIZENS INSURANCE COMPANY     *
OF AMERICA,                    *
                               *
              Plaintiff,       *
                               *
v.                             *
                               *
THE UNITED STATES,             *
                               *
              Defendant.       *
*************************************
```

Subject Matter Jurisdiction; Motion to Dismiss; RCFC 12(b)(1); Medicare Secondary Payer Act; Failure to Allege Violation of a Money-Mandating Source of Substantive Law; Purported Implied-in-Fact Contract; Testan; Wilson; Aerolineas Argentinas; Lion Raisins, Inc.

M. Sean Fosmire, Marquette, MI, for plaintiff.

Antonia R. Soares, United States Department of Justice, Washington, DC, for defendant.  James P. Walsh, United States Department of Health and Human Services, of counsel.

## OPINION AND ORDER

**SWEENEY**, Judge

Plaintiff Citizens Insurance Company of America, a no-fault automobile insurer, alleges that eight motorists it insures were injured in accidents and have been eligible for coverage under the Medicare program since 2005.  Plaintiff has paid for medical expenses on behalf of these eight motorists and, citing the Medicare Secondary Payer Act ("MSPA"), now seeks reimbursement.  Defendant moves to dismiss the complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), arguing that the MSPA is not a money-mandating statute and that plaintiff has failed to establish jurisdiction in the United States Court of Federal Claims ("Court of Federal Claims").  For the reasons set forth below, defendant's motion is granted.

## I.  BACKGROUND

Plaintiff, a Michigan insurance corporation, insured eight motorists who were involved in accidents that occurred prior to December 5, 1980.  Compl. ¶¶ 1, 6-15.  Plaintiff alleges that coverage afforded under its policies is governed by the requirements of the Michigan No-Fault Automotive Insurance Act ("No-Fault Act") because these accidents occurred within Michigan.  Id. ¶ 15.  Plaintiff has paid for medical expenses arising out of each accident on behalf of the

eight motorists since 2005.[1]  Id. ¶¶ 7-14, 16.

According to plaintiff, each motorist elected coordination of medical benefits under his or her insurance policy pursuant to section 3109a of the No-Fault Act.  Id. ¶ 17.  Because of this election, plaintiff asserts that medical expenses incurred that were related to motor vehicle accidents were, under Michigan law, payable under either the Medicare program or under no-fault insurance coverage, but not under both.  Id.  Plaintiff alleges that, pursuant to Michigan law,

> when an insured's medical expenses are submitted to a no-fault automobile carrier, that carrier must pay those expenses, even if properly payable, in whole or in part, by other coverage or resources.  If there are issues relating to coverage or priority, the no-fault insurer's obligation is to pay the item, and then seek repayment or reimbursement from other coverage or resources.

Id. ¶ 18.

Plaintiff claims that the MSPA governs the priority between the responsibilities of the Centers for Medicare and Medicaid Services ("CMS"), a division of the United States Department of Health and Human Services ("HHS"), and insurers of no-fault automobile insurance policies.  Id. ¶ 19.  Medicare, plaintiff asserts, is a secondary payer, while no-fault automobile insurance is the primary payer, for accidents that are governed by the MSPA's provisions.  Id.  For accidents to which the MSPA's provisions do not apply, plaintiff alleges that "Medicare is primary for all medical expenses which are covered under the Medicare program, despite the involvement of no-fault automobile insurance."  Id. ¶ 20.

According to plaintiff, the MSPA applies only to motor vehicle accidents that occurred on or after December 5, 1980.  Id. ¶ 21.  For motor vehicle accidents that occurred before that date, plaintiff asserts that the MSPA "does not apply, even for medical expenses incurred after that date," and Medicare is the primary payer.  Id. ¶ 22.  Plaintiff asserts that an implied contract between the CMS and no-fault insurers determines the rights of priority under the MSPA and its implementing regulations.  Id. ¶ 24.  Contending that Medicare is primarily responsible for payment of the eight motorists' medical expenses, plaintiff seeks reimbursement from the United States in the amount of $1.5 million for all expenses it has paid on their behalf, plus interest, costs, and fees.  Id. ¶ 25.

## II.  LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); see also

---

[1] One motorist died in 2009.  Compl. ¶ 11.

Matthews v. United States, 72 Fed. Cl. 274, 278 (2006) (stating that subject matter jurisdiction is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case"). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). The parties or the court sua sponte may challenge the court's subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). Thus, unless Congress consents to a cause of action against the United States, "there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." Sherwood, 312 U.S. at 587-88.

The Tucker Act confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). Although the Tucker Act waives the sovereign immunity of the United States for claims for money damages, it is only a jurisdictional statute. United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, the Tucker Act "does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc portion). The separate source of substantive law must constitute a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc); accord Martinez v. United States, 333 F.3d 1295, 1302-03 (Fed. Cir. 2003) (en banc) (explaining that the Tucker Act waives sovereign immunity for actions brought pursuant to contracts with the government, actions to recover illegal exactions of money by the government, and actions brought pursuant to "money-mandating constitutional provisions, statutes, regulations, or executive orders").

**B.  Motion to Dismiss**

The court's "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion." Palmer v. United States, 168 F.3d 1310, 1313 (Fed. Cir. 1999). When deciding an RCFC 12(b)(1) motion to dismiss, the court assumes all factual allegations are true and draws all reasonable inferences in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-19 (1982); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir.

3

2006).  The burden of establishing the court's subject matter jurisdiction resides with the party seeking to invoke it, see McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936), and a plaintiff must establish jurisdiction by a preponderance of the evidence, Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  If the defendant or the court questions jurisdiction, the plaintiff cannot rely solely on allegations in the complaint but must bring forth relevant, adequate proof to establish jurisdiction.  See McNutt, 298 U.S. at 189. When ruling upon a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to decide any factual disputes.  See Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999); Reynolds, 846 F.2d at 747.  If the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim.  Matthews, 72 Fed. Cl. at 278; see also RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## C.  The MSPA

The Social Security Act of 1965 established the Medicare program, which is a "system of federally funded health insurance for the aged, the disabled, and people suffering from end-stage renal disease."  Wilson v. United States, 405 F.3d 1002, 1005 (Fed. Cir. 2005); 42 U.S.C. § 1395(c) (2006) (providing "basic protection against the costs of hospital, related post-hospital, home health services, and hospice care" for qualifying individuals).  Many individuals covered by Medicare are eligible for benefits under group health plans offered by their employers.  Health Ins. Ass'n of Am. v. Shalala, 23 F.3d 412, 414 (D.C. Cir. 1994).  Until 1980, Medicare served as the primary payer of health costs for eligible individuals.  Stalley v. Methodist Healthcare, 517 F.3d 911, 915 (6th Cir. 2008); see also Wilson, 405 F.3d at 1005 (explaining that Medicare paid for medical services without regard to whether those services were also covered by an employer group health plan); H.R. Rep. No. 96-1167, at 389 (1980), reprinted in 1980 U.S.C.C.A.N. 5526, 5752 ("Under present law, medicare is the primary payor . . . for hospital and medical services received by beneficiaries.  This is true even in cases in which a beneficiary's need for services is related to an injury or illness sustained in an auto accident and the services could have been paid for by a private insurance carrier under the terms of an automobile insurance policy.").

In 1980, Congress, in order to "counteract escalating health-care costs," Stalley, 517 F.3d at 915; enacted the MSPA, a series of amendments that were designed to make Medicare a "secondary payer."  United Seniors Ass'n v. Philip Morris USA, 500 F.3d 19, 21 (1st Cir. 2007). Under the MSPA, Medicare is prohibited from making payment to a beneficiary for medical expenses if "payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance."[2]  42 U.S.C. § 1395y(b)(2)(A); accord 42 C.F.R. § 411.32(a)(1) (2006) ("Medicare benefits are

---

[2]  Under the MSPA, a "primary plan" means "a group health plan or large group health plan, . . . a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance . . . ."  42 U.S.C. § 1395y(b)(2)(A).

secondary to benefits payable by a primary payer even if State law or the primary payer states that its benefits are secondary to Medicare benefits or otherwise limits its payments to Medicare beneficiaries.").

"When the MSP statute applies, a private group health plan must pay for an expense first. Thus, it is the 'primary payer.' Medicare pays for any remaining amount of the expense not satisfied by the group health plan. Consequently, it is the 'secondary payer.'" N.Y. Life Ins. Co. v. United States, 190 F.3d 1372, 1374 (Fed. Cir. 1999) (citing Blue Cross & Blue Shield of Tex., Inc. v. Shalala, 995 F.2d 70, 73 (5th Cir. 1993)).  If, however, Medicare determines that the primary insurer has not paid and that no prompt payment can be reasonably expected, then Medicare can pay the beneficiary, though this payment is conditioned on its right to seek reimbursement where the primary plan later pays or is found responsible for payment.  42 U.S.C. § 1395y(b)(2)(B)(i).  The MSPA further provides that

> [a] primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.

Id. § 1395y(b)(2)(B)(ii).  The United States, in order to recover payment made for an item or service, "may bring an action against any or all entities that are or were required or responsible . . . to make payment with respect to the same item or service (or any portion thereof) under a primary plan."  Id. § 1395y(b)(2)(B)(iii).  The MSPA also grants Medicare a right of subrogation, id. § 1395y(b)(2)(B)(iv) ("The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right . . . of an individual or any other entity to payment with respect to such item or service under a primary plan."), and establishes a private cause of action for damages "in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)," id. § 1395y(b)(3)(A).

## III.  DISCUSSION

### A.  Plaintiff Fails to Identify an Independent, Money-Mandating Provision

Plaintiff filed its complaint on April 22, 2011.[3]  Defendant moves to dismiss the complaint because the MSPA "does not mandate compensation by the United States for Citizens'

---

[3]  On the same day this action was commenced, plaintiff's counsel filed a complaint on behalf of Auto Club Insurance Association involving another Medicare beneficiary.  See Auto Club Ins. Ass'n v. United States, No. 11-256C (Fed. Cl. filed Apr. 22, 2011).  Plaintiff's counsel then filed a second complaint on behalf of Auto Club Insurance Association involving a different Medicare beneficiary.  See Auto Club Ins. Ass'n v. United States, No. 11-406C (Fed. Cl. filed June 11, 2011).  Both related cases are pending before other judges of the court.

alleged damages." Mot. 11.  In response, plaintiff argues that Tucker Act jurisdiction is not contingent upon an independent, money-mandating provision: "There is nothing in the language of the Tucker Act that so limits its scope.  It is true that that is language which has been used in some cases discussing the scope of the jurisdiction of the Tucker Act.  But such a statute is not always required."  Opp'n 12.  It further asserts:

> Despite the fact that the cases refer to a "money mandating statute," the language of the Tucker Act itself makes clear that the existence of a money mandating statute is only one consideration for the Court.  Again, the fact that the statute is disjunctive in nature tells us that a plaintiff is entitled to have its claim considered in the Court of Federal Claims if it is based on a money mandating statute, or if it is based on another statute or regulation, or if it [is] based on an implied contract with the United States, or if it seeks damages not sounding in tort.  The United States is simply reading far too much into the Testan line of cases on the jurisdictional issue.

Id. at 14.  Moreover, plaintiff asserts that the "damages" clause of the statute confers jurisdiction upon the court because its claim is one "for the restitution of money that has been paid by Citizens when the obligation was properly that of CMS under the Medicare program."  Id. at 20.

Plaintiff's argument is flawed.  In effect, plaintiff asks the court to ignore binding precedent interpreting the Tucker Act and setting forth the court's jurisdiction.  Precedent is "[a] decided case that furnishes a basis for determining later cases involving similar facts or issues," Black's Law Dictionary 1214 (8th ed. 2004), and binding precedent constitutes precedent "that a court must follow," id. at 1215.  As the United States Court of Appeals for the Federal Circuit ("Federal Circuit") explained, the Court of Federal Claims "is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims."  Coltec Indus. v. United States, 454 F.3d 1340, 1353 (Fed. Cir. 2006).  Indeed,

> the Court of Federal Claims may not deviate from the precedent of the United States Court of Appeals for the Federal Circuit any more than the Federal Circuit can deviate from the precedent of the United States Supreme Court.  Trial courts are not free to make the law anew simply because they disagree with the precedential and authoritative analysis of a reviewing appellate court.

Crowley v. United States, 398 F.3d 1329, 1335 (Fed. Cir. 2005).  It is well settled that the Tucker Act is "merely jurisdictional," Testan, 424 U.S. at 400, and "does not create any substantive right enforceable against the United States for money damages," id. at 398; accord Khan v. United States, 201 F.3d 1375, 1377 (Fed. Cir. 2000) ("The Tucker Act does not, by itself, create any causes of action against the United States for money damages.").  The Tucker Act confers jurisdiction upon the Court of Federal Claims "whenever the substantive right exists."  Testan, 424 U.S. at 398 (citing Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1007-09 (Ct. Cl.

1967), <u>abrogated in part on other grounds by</u> <u>Malone v. United States</u>, 849 F.2d 1441, 1444-45 (Fed. Cir. 1988)). Therefore, "Tucker Act jurisdiction requires not only a claim against the United States, but also requires, based on principles of 'sovereign immunity,' that <u>there be a separate money-mandating statute the violation of which supports a claim for damages against the United States</u>." <u>Holley v. United States</u>, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (emphasis added); <u>accord</u> <u>James v. Caldera</u>, 159 F.3d 573, 580 (Fed. Cir. 1998). The Court of Federal Claims cannot deviate from these principles, and plaintiff's attempt to circumvent binding precedent that is directly on point cannot be sustained.

Plaintiff concedes that its claim is not founded upon a money-mandating statute, stating that "the <u>MSP Act does not make an express provision for reimbursement</u> from CMS to an insurer which has paid a medical item." Opp'n 2-3 (emphasis added). It also acknowledges that "[f]inding the legal authority for a right of reimbursement flowing from the United States to the no-fault insurer when the primary/secondary roles are reversed does, we recognize, require more thought and analysis, because <u>that right is not expressly declared in a statute</u>." <u>Id.</u> at 5 (emphasis added). Rather than mandate that the federal government compensate no-fault automobile insurers, the MSPA merely resolves potential disputes over priority between Medicare and primary insurance plans where both are otherwise required to pay for the same medical items and services. <u>See</u> 42 U.S.C. § 1395y(b)(2) (establishing Medicare as a secondary payer and precluding payment with respect to any item or service to the extent that payment has been made or can reasonably be expected to be made under no-fault insurance). Thus, the MSPA establishes an order of priority for payment, but does not create an obligation to pay for medical services. The MSPA also does not direct the federal government to reimburse private insurers for their own expenses when Medicare is not a secondary payer. Instead, the MSPA authorizes the federal government to "bring an action against any entity which is required or responsible . . . to make payment with respect to the . . . item or service (or any portion thereof) under a primary plan." <u>Id.</u> § 1395y(b)(2)(B)(ii).

In short, plaintiff must demonstrate that the MSPA is a money-mandating source that supports a claim for damages against the United States in order to establish Tucker Act jurisdiction in this court. Since plaintiff has failed to do so, the court lacks jurisdiction to entertain plaintiff's claim under the MSPA.

## B. Plaintiff Does Not Assert an Illegal Exaction Claim

Next, plaintiff, continuing to contend that Tucker Act jurisdiction need not be based upon a separate money-mandating statute, invokes the last clause of the Tucker Act, which references recovery of damages not sounding in tort, and cites two illegal exaction cases, <u>Clapp v. United States</u>, 117 F. Supp. 576 (Ct. Cl. 1954), and <u>Pan American World Airways v. United States</u>, 122 F. Supp. 682 (Ct. Cl. 1954), in support of its position. Plaintiff argues that the court asserted jurisdiction in these cases even though "there w[ere] no 'money-mandating' statutory provision[s] that required the United States to reimburse the claimant, but in each case the right to reimbursement was found and was upheld." Opp'n 20. Plaintiff, however, misunderstands the

nature of this court's jurisdiction.

An illegal exaction claim "involves money that was 'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute or a regulation.'"  Norman v. United States, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting Eastport S.S. Corp., 372 F.2d at 1007).  The United States Court of Claims characterized an illegal exaction as a situation in which "'the Government has the citizen's money in its pocket . . . .'"  Eastport S.S. Corp., 372 F.2d at 1008 (quoting Clapp, 117 F. Supp. at 580).  The Tucker Act "provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power."  Aerolineas Argentinas v. United States, 77 F.3d 1564, 1573 (Fed. Cir. 1996).  Here, however, plaintiff has not alleged that the United States required it to make a payment that was contrary to law.  See Lion Raisins, Inc. v. United States, 54 Fed. Cl. 427, 434 (2002) (rejecting an illegal exaction claim because the plaintiff never claimed that it was required to pay the United States money that, pursuant to a regulation or statute, the plaintiff was, in fact, not required to pay).  Therefore, plaintiff's reliance upon illegal exaction cases such as Clapp and Pan American World Airways to establish Tucker Act jurisdiction in this case is wholly misplaced.

Plaintiff, citing the Federal Circuit's decision in Wilson, which involved an illegal exaction claim arising under the Medicare Act, argues that Tucker Act jurisdiction exists if no administrative review process has been mandated by Congress.  Plaintiff, however, misreads Wilson.  In Wilson, the plaintiff filed a medical malpractice suit against a hospital and two physicians who treated her husband prior to his death.  405 F.3d at 1007.  The plaintiff eventually settled her case, and the HHS then asserted a claim for reimbursement against the settlement:

> HHS stated that Medicare had made payments for Mr. Wilson's care . . . under Medicare Part A and . . . under Medicare Part B. . . .  The asserted basis for seeking reimbursement from the estate was that HHS was entitled to repayment for conditional payments made by Medicare on behalf of Mr. Wilson under the [MSPA] . . . , in particular 42 U.S.C. § 1395y(b)(2)(B)(i).

Id.  The plaintiff settled the claim for reimbursement with the HHS and, thereafter, filed suit seeking to recover the amount she paid, alleging that the HHS effected an illegal exaction.  Id. at 1008.  In its motion to dismiss, the government argued that the Court of Federal Claims lacked jurisdiction because (1) Congress explicitly provided that the federal district courts were the exclusive fora for issues concerning the Medicare Act's coverage and payment provisions, and (2) the plaintiff failed to exhaust her administrative remedies.  Id.  The Court of Federal Claims dismissed the claim for lack of jurisdiction, and the Federal Circuit affirmed.  Id. at 1008, 1016.

The Federal Circuit acknowledged that the Court of Federal Claims generally possesses jurisdiction over illegal exaction claims, but it explained that those claims "may not be asserted . . . under the Tucker Act when 'Congress has expressly placed jurisdiction elsewhere.'"  Id. at 1009 (quoting Aerolineas Argentinas, 77 F.3d at 1573).  Citing St. Vincent's Medical

Center v. United States, wherein the court held that Tucker Act jurisdiction was preempted because Congress provided a specific and comprehensive scheme for administrative and judicial review of Medicare reimbursement claims such as the ones asserted by St. Vincent's Medical Center,[4] see 32 F.3d 548, 549 (Fed. Cir. 1994), the Federal Circuit reiterated that "if a claim arises under the Medicare Act, it may not be pursued in the Court of Federal Claims," Wilson, 405 F.3d at 1010; see also id. at 1016 ("Congress has insisted that matters arising under the Medicare Act be presented in the first instance to the agency."). Since the plaintiff's claim arose under the Medicare Act, the Federal Circuit concluded that the Court of Federal Claims was without jurisdiction to entertain it. Id. at 1015 ("Because the Medicare Act contains its own comprehensive administrative and judicial review scheme which was available to Ms. Wilson, 'Congress has expressly placed jurisdiction elsewhere,' and there is no Tucker Act jurisdiction over Ms. Wilson's claim." (quoting Aerolineas Argentinas, 77 F.3d at 1573)).

Although the court lacked jurisdiction in Wilson because Congress expressly provided for an administrative review process, Wilson does not stand for the proposition that plaintiff may invoke Tucker Act jurisdiction for any claim for which an administrative review process is unavailable.

### C.  Plaintiff Does Not Allege the Requisite Elements of an Implied Contract With the United States

Plaintiff also alleges that an implied contract between it and the CMS determines "the rights of priority under the statutes and regulations . . . ." Compl. ¶ 24. According to plaintiff, this implied contractual relationship requires that plaintiff "pay[] for the medical expenses which arise under the MSP Act, and Medicare pay[] for those which do not." Opp'n 16. It adds:

> [T]he organization of the Medicare Secondary Payer Program, under the statute and the regulations, establish a program, a set of mutual obligations, and a known priority between Medicare and the various payers subject to the MSP laws as to which is primary and which []is secondary. It is the relationship between the parties, the circumstances of their interactions, which form the basis of the contract implied in fact which is being argued here.

Id. at 16-17.

A distinction must be made between an implied contractual relationship in law and in fact. An agreement implied in law "is a 'fiction of law' where 'a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress.'" Hercules Inc. v. United States, 516

---

[4]  The provisions of the Medicare Act that were at issue in Wilson differed from those at issue in St. Vincent's Medical Center. Wilson, 405 F.3d at 1009. Nevertheless, the Wilson court indicated that St. Vincent's Medical Center was of "particular relevance" to the case sub judice. Id.

U.S. 417, 424 (1996) (quoting <u>Balt. & Ohio R.R. Co. v. United States</u>, 261 U.S. 592, 597 (1923)); <u>see also</u> <u>Int'l Data Prods. Corp. v. United States</u>, 492 F.3d 1317, 1325 (Fed. Cir. 2007) (explaining that an implied-in-law contract is one "in which there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice").  The Tucker Act "does not reach claims based on contracts implied in law . . . ."  <u>United States v. Mitchell</u>, 463 U.S. 206, 218 (1983); <u>see also</u> <u>Merritt v. United States</u>, 267 U.S. 338, 341 (1925) ("The Tucker Act does not give a right of action against the United States in those cases where, if the transaction were between private parties, recovery could be had upon a contract implied in law.").  Rather, the Tucker Act extends only to implied-in-fact contracts.

An implied-in-fact contract is "an agreement . . . founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." <u>Balt. & Ohio R.R. Co.</u>, 261 U.S. at 597.  In order to invoke Tucker Act jurisdiction based upon an express or implied-in-fact contract, a plaintiff must allege all the requisite elements of a contract with the United States, <u>see</u> <u>Harbert/Lummus Agrifuels Projects v. United States</u>, 142 F.3d 1429, 1434 (Fed. Cir. 1998); <u>Peninsula Grp. Capital Corp. v. United States</u>, 93 Fed. Cl. 720, 731 (2010) (stating that an implied-in-fact contract "requires the existence of the same elements as an express contract"), which requires "a mutual intent to contract including offer, acceptance, and consideration," <u>Total Med. Mgmt., Inc. v. United States</u>, 104 F.3d 1314, 1319 (Fed. Cir. 1997). Furthermore, any "contract with the United States also requires that the Government representative who entered or ratified the agreement had actual authority to bind the United States."  <u>Trauma Serv. Group v. United States</u>, 104 F.3d 1321, 1325 (Fed. Cir. 1997); <u>accord</u> <u>Lion Raisins, Inc.</u>, 54 Fed. Cl. at 431 (stating that a plaintiff must "allege mutual intent to contract including an offer, an acceptance, consideration and facts sufficient to establish that the contract was entered into with an authorized agent of the United States who 'had actual authority to bind the United States.'" (quoting <u>Trauma Serv. Group</u>, 104 F.3d at 1325)).

Here, plaintiff does not allege the existence of an express contract with the United States, <u>see</u> Compl. ¶ 24 (alleging an implied contract between the CMS and plaintiff), and fails to allege the requisite elements of an implied-in-fact contract that requires the CMS to reimburse plaintiff for its payment of the motorists' medical expenses.  Instead, plaintiff vaguely refers to a "comprehensive system that Congress has put into place" as creating a contractual relationship between it and the government and asserts that "[t]here must . . . be a recognized right to reimbursement flowing from CMS to a no-fault insurer or other payer which has paid an item that CMS is to pay . . . ."  Opp'n 17.  These bald assertions, however, do not permit the court to exercise jurisdiction over plaintiff's implied contract claim.  Consequently, plaintiff has not established the court's jurisdiction over its implied contract claim.

## D.  The Court of Federal Claims Cannot Create a Remedy for Plaintiff

Plaintiff asks the court to assert jurisdiction over the complaint because, it asserts, it has no other means of obtaining relief, explaining:

> In this case . . . , neither Congress nor CMS have [sic] established any administrative avenue for submission of the reimbursement claims that are made here.  The Tucker Act provides the sole basis for the plaintiff's claim.  If there is no relief provided to the plaintiff under the Tucker Act for this claim, there is no relief.

Id. at 14; see also id. at 5 (arguing that plaintiff "must look to this Court to enforce the converse obligation of reimbursement, when the insurer has paid for medical expenses for which medicare is primary").  Once again, plaintiff cannot circumvent the requirement that, in order to invoke the court's Tucker Act jurisdiction, it must identify a separate source of substantive law that create a right to money damages.  Fisher, 402 F.3d at 1172; Loveladies Harbor, Inc., 27 F.3d at 1554; see also Testan, 424 U.S. at 404 (explaining that, where a claimant is without a remedy in the Court of Federal Claims, "[a]dditional remedies . . . are for the Congress to provide and not for the courts to construct").  In Testan, the United States Supreme Court ("Supreme Court") stated that it was "not ready to tamper with these established principles because it might be thought that they should be responsible to a particular conception of enlightened governmental policy."  Id.

Furthermore, plaintiff claims that it has a "right to reimbursement" even though "the right is not expressly declared by statute."  Opp'n 5.  Plaintiff is mistaken.  Congress enacted the MSPA in order to permit Medicare to recoup its own payments when it is not the primary payer, thereby reducing federal healthcare costs.  See Stalley, 517 F.3d at 915.  The MSPA provides a private right of action and cause of action for the United States, see 42 U.S.C. §§ 1395y(b)(2)(B)(iii), (b)(3)(A), but Congress did not intend to provide reimbursements to plaintiff and other no-fault automobile insurers.  Plaintiff asks the court to assert jurisdiction over its claim "[i]n the interest of even-handed application of the reimbursement scheme set up by the MSP statutory-regulatory complex," Opp'n 21, but Congress did not enact the MSPA to provide the remedy plaintiff seeks.  Since Congress did not expressly provide for a right of action for no-fault automobile insurers, the court is both unable and unwilling to create that right.  See Touche Ross & Co. v. Redington, 442 U.S. 560, 571 (1979) (rejecting the argument that the court should infer a private cause of action where Congress did not expressly create one); accord id. at 572 ("Obviously, then, when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." (citing Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 734 (1975)).  As the Supreme Court cautioned, courts "are not at liberty to legislate.  If there is to be a federal damages remedy under these circumstances, Congress must provide it.  '[I]t is not for us to fill any hiatus Congress has left in this area.'"  Id. at 579.

## IV.  CONCLUSION

For the foregoing reasons, the court lacks jurisdiction over plaintiff's complaint.  Accordingly, defendant's motion to dismiss is **GRANTED**.  The clerk is directed to **DISMISS WITHOUT PREJUDICE** the complaint and to enter judgment accordingly.  No costs.

11

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge